U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

MAR 11 2009

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| UNITED STATES OF AMERICA | : | DOCKET NO. 2:06 CR 20103-005 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| RICHARD TOWNLEY | : | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Presently before the court is a Motion for a New Trial [doc. 242] filed by Richard Townley ("Townley").[1] The Government has filed an opposition.

Standard for New Trial

The trial judge can grant a new trial if she believes the verdict is contrary to the weight of the evidence. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1940); *Bazile v. Bisso Marine Co.*, 606 F.2d 101 (5th Cir.1979). In a motion for a new trial, the judge is free to weigh the evidence. *Id.* The trial court does not abuse its discretion in accepting the jury's evaluations regarding the witnesses' credibility. *Polanco v. City of Austin, Tex.*, 78 F.3d 968, 980-981 (C.A.5 (Tex.),1996)

Charges

---

[1] The motion as originally filed requested a new trial based upon ineffective assistance of counsel and insufficient evidence. The defendant has withdrawn his arguments of ineffective assistance of counsel, reserving them for a postconviction §2255 motion. The only issue before the court is the allegation of insufficient evidence.

1

Townley was named in Counts One, Two, and Three, of a four-count Second Superseding Indictment filed in the Western District of Louisiana on February 13, 2007. Count One charges that beginning on an unknown date and continuing through August 18, 2006, in the Western District of Louisiana and elsewhere, Rodney Ryder, Keith Smith, Wayne Adams, Richard Townley, and other unnamed coconspirators did knowingly and unlawfully combine, conspire, confederate, and agree together to circumvent the immigration laws of the United States by concealing, harboring or shielding from detection certain aliens, in violation of 8 U.S.C. §1324(a)(1)(A)(v)(I). Count Two charged that beginning on an unknown date and continuing through August 18, 2006, in the Western District of Louisiana and elsewhere, Rodney Ryder, Keith Smith, Wayne Adams, and Richard Townley, aided and abetted by each other, in reckless disregard of the facts that an alien or aliens who had come to, entered and remained in the United States in violation of the law, did conceal, harbor and shield from detection, or attempted to conceal, harbor, and shield from detection, such alien or aliens, in violation of 8 U.S.C. §1324(a)(1)(A)(iii). Count Three charged that from a date unknown to the Grand Jury and continuing through on or about, August 18, 2006, the defendant, Richard Townley, did knowingly conduct, control, manage, supervise, direct or own an unlicensed money transmitting business, more specifically, Provisional Funds, and as part of that business he conducted a check cashing service, a money transmitting business affecting interstate commerce, without having obtained the required licenses under federal law and as required under the laws of the State of Louisiana, all in violation of Title 18, United States Code, §1960(a).

## Discussion

Townley made two motions for acquittal during trial and both were denied. The jury

returned a verdict of guilty on all counts.

Townley argues that he had "little if anything to do with the hiring or supervision of workers,"[2] but Townley was not charged with illegally hiring the aliens. §1324 explicitly exempts employment of illegal aliens from its strictures. *United States v. Cantu*, 557 F.2d 1173, 1177-1178 (5th Cir. 1977). §1324 makes it a crime for anyone to harbor an alien, knowing or in reckless disregard of the fact that the alien has entered or remained in the United States in violation of law.

The Government argues that, with respect to the conspiracy, it was obvious that an illegal work camp was established and maintained at the Opelousas Street address.
From pole camera images, to testimony from the managers of the camp and the illegal workers who lived there, numerous pieces of direct and circumstantial evidence portrayed the reality that hundreds of illegal workers were housed, paid and fed at the Opelousas Street camp.

Townley admits that he relied on Rodney Ryder to make sure the workers were properly documented.[3] Townley testified that, as part of the check cashing business, he appeared at the camp on a number of Fridays during November and December 2005. Brenda Frame and Tricia Frame testified that they took over this part of the business when Townley moved back to Little Rock, Arkansas, in February 2006.

Townley argues that clients did not call him for information, nor did he quote labor prices. He testified that he did not believe that he was cashing checks to keep the workers "hidden" or away

---

[2] Brief in Support of Townley's Motion, p. 2.

[3] Likewise, Ryder testified that he relied on Sergio Alire to handle documentation issues; Keith Smith and Wayne Adams relied on Ryder and R&R.

from other check cashing services in town.[4] He also admitted that he did not check workers' documents. Townley testified that he never heard about workers running from police and he thought all the workers were documented.

It is the Government's position that, while the conduct of some defendants may be classified as more culpable or less culpable than others, it took the work of all five men to establish and maintain the Opelousas camp. While this conspiracy may have had less culpable members, the Government argues that they are nonetheless guilty and were vital to the overall function of the conspiracy. Each defendant in this case had his own role in the conspiracy, and each role furthered the conspiracy. While Sergio Alire recruited illegal workers, Rodney Ryder, Wade Townley, Keith Smith and Wayne Adams joined together to form an "Alliance" to manage the Opelousas street camp, and profit from it. Multiple trial documents show this relationship among all four men. Trial testimony and evidence established that in order for this illegal work camp to operate over an extended period of time, certain basic functions had to be performed by various Alliance members. Labor had to continue to come in through Sergio Alire and Rodney Ryder. Work contracts had to be established through Keith Smith and Wayne Adams. Payment had to be made to the workers through Wade Townley.

The testimony at trial further established that almost every illegal worker received cash in lieu of a paycheck. Paying the illegal workers in cash solved many potential problems. The Government submits that flooding area banks and check cashing facilities with hundreds of illegal aliens every Friday would have certainly drawn attention to the situation at the Opelousas Street camp. Furthermore, without valid identification, the illegal workers would have likely been unable

---

[4] Brief in Support of Townley's Motion, p. 10.

to cash the checks, rendering the checks worthless. For a number of obvious reasons, cash payments are what illegal workers require and expect, and in this case it was a vital function to this conspiracy. This important function was performed by Townley.

The Government also argues that sufficient evidence existed at trial to prove all of Townley's actions and involvement were done knowingly or in reckless disregard of the fact that these workers were illegal. Testimony established that Townley went to the camp for several weeks to deliver the cash to the workers. He saw what the jury saw on the pole cameras, he saw the rows of approximately 150 cots and the living environment of the camp, and he saw each worker approach him as he checked each name on the payment rosters introduced at trial. Townley handed each worker an envelope with a cash payment for his labor, minus the two percent fee Townley kept for his check cashing services. Townley was also listed on the camp rules as an owner of the lease, along with the other Alliance members.

The Government argues that Townley participated in meetings among the Alliance members, and was a part of forming International Workforce Solutions (IWS). Townley testified that to the best of his knowledge, IWS never came into existence. He did not invest in IWS, nor did he receive a bank card from IWS.

The evidence introduced at trial established that Townley's name was found on various emails, documents and correspondence. It is the Government's position that all of these documents established the knowledge and guilt of all four defendants.

Testimony established that after Dunham Price conveyed concerns about illegal workers, Townley attended a meeting in February of 2006 where this issue was discussed. A follow-up letter dated February 21, 2006, sent by all four Alliance members, including Townley, again discussed this

5

issue and the need to "bring in fully documented legal immigrants that we can infiltrate into the current crew..."[5] Trial testimony established Townley went to Puerto Rico in an attempt to solve this problem and "infiltrate" the Alliance's illegal work crew with Puerto Rican workers.

Townley argues that a severance should have been granted because the evidence against him was *de minimus* when compared to the evidence against his codefendants and that he merely did as he was instructed to do by Ryder, whom he trusted to know what was proper. In response, the Government argues that while Townley may not have interacted with certain trial witnesses to the extent other defendants did, a substantial and sufficient amount of evidence proved his role and involvement in the conspiracy. Sergio Alire testified that Townley was a "boss" to him. Townley was instrumental in establishing the check cashing business that cashed the illegal worker's paychecks. Townley attended important meetings. The evidence established that Townley was an integral part of this conspiracy.

## Conclusion

The grant of a new trial is necessarily an extreme measure, because it is not the role of the judge to sit as a thirteenth member of the jury. *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir.1997); *see also State v. Ladabouche*, 146 Vt. 279, 502 A.2d 852, 856 (1985) (stating that such a formulation would allow the judge to order a retrial when he disagreed with the outcome). Townley asks the Court to perform a sufficiency review and grant a new trial "in the interest of justice." This court, having observed the entire trial and having listened to the testimony of all the witnesses, as well as reviewing the memoranda submitted in support of and in opposition to this motion, concludes that a rational jury could have found all of the elements of the crimes beyond a

---

[5] Government memorandum in opposition, p. 5.

reasonable doubt. Therefore, the motion for new trial will be denied.

Lake Charles, Louisiana, this _____ day of March, 2009.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE